UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re REFCO INC. SECURITIES LITIGATION   :
------------------------------------------------------------X

Case No. 07-MD-1902 (JSR)

This Document Relates to:
------------------------------------------------------------X
KENNETH M. KRYS, et al.,   :
   :
   Plaintiffs, :
   :
-against-   :
   :
CHRISTOPHER SUGRUE, et al.,   :
   :
   Defendants. :
   :
------------------------------------------------------------X
KENNETH M. KRYS, et al.,   :
   Plaintiffs, :
   :
-against-   :
   :
DEUTSCHE BANK SECURITIES INC., et al.,   :
   :
   Defendants. :
   :
------------------------------------------------------------X

Case No. 08-CV-3065 (JSR)
Case No. 08-CV-3086 (JSR)

Case No. 10-CV-3594 (JSR)

**RESPONSE OF DEFENDANTS CURRENTLY SET FOR TRIAL ON SEPTEMBER 4
IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000

*Attorneys for Defendant Mayer Brown LLP*

WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600

200 Park Avenue
New York, New York 10166
Tel: (212) 294-6882

*Attorneys for Defendants Mark Ramler and
Grant Thornton LLP*

| | |
|---|---|
| COOLEY LLP<br>1114 Avenue of the Americas<br>New York, NY 10036-7798<br>Tel: (212) 479-6000 | CLAYMAN AND ROSENBERG<br>305 Madison Avenue, Suite 1301<br>New York, NY 10165<br>Tel: (212) 922-1080 |
| *Attorneys for Defendant Joseph P. Collins* | *Attorneys for Defendant Paul Koury* |

As Judge Rakoff observed nearly two years ago, "we're long past the time when the complaint should be amended." Tr. of 6/28/11 Oral Arg. at 7. That is especially so now that trial is "imminent." Mem. Order, *Krys v. Aaron*, 08 Civ. 7416, Dkt. No. 445 ("*Krys v. Aaron* Order") at 4, (May 9, 2013) (amendment would be denied if trial were "imminent"). When a plaintiff has not sought to amend his pleading "until after discovery was completed and summary judgment motions were fully briefed," "the interests of justice would not be served by permitting . . . a belated amendment," which would "severely prejudice[ ]" the other parties to the case. *Diplomatic Man, Inc. v. Brown*, 2006 WL 2434933, at *3 (S.D.N.Y. Aug. 22, 2006) (Rakoff, J.).

Plaintiffs' request presents these concerns in spades, and the Special Master was right to reject it. Even when Plaintiffs had led us all to believe that they were merely attempting to "clean up the pleadings," the Special Master agreed that "there would be substantial prejudice here to the defendants were an amendment allowed." Tr. of 5/16/13 Hrg. at 9. To make sure there would be "a record to review," he allowed Plaintiffs to submit a formal motion. *Id*. at 10. But he warned them that he would deny any amendment on the grounds of "prejudice and undue delay," unless they were able to make some "extraordinary argument." *Id*.

Plaintiffs have not made anything close to an "extraordinary argument." In fact, their three-page motion makes no particular argument at all. It does not even acknowledge the recent order on amendment in *Krys v. Aaron*, even though the Special Master warned Plaintiffs more than once that Judge Rakoff's reasoning in that order would guide any decision here.

At the same time, what Plaintiffs have submitted is certainly "extraordinary" in that it amplifies the prejudice to the Mayer Brown and Grant Thornton Defendants by a factor of ten. Plaintiffs' redline shows the addition of **more than 1,000 paragraphs**. Their proposed amendment would inject new claims, change existing ones, revive claims that were dismissed

1

with prejudice, introduce new allegations of fraud by an entity (Arthur Andersen) that has never been a party, and bring long-dismissed defendants back into the case. Plaintiffs are also attempting to rip the rug out from under the law of this case by **withdrawing** nearly 500 paragraphs, including many that the Court has treated as judicial admissions narrowing the issues for discovery and trial. *See*, *e.g.*, Ex. C (redline) pp. 3-5, 84-90 (admissions about wrongdoing by SPHinX agents). The prejudice from these proposed changes would be staggering.

Indeed, the proposed amendment would require revisiting nearly every substantive ruling Judge Rakoff and Special Master Capra have made in this case—long, long after the time has passed for seeking reconsideration. Beginning in late 2009, Judge Rakoff and Special Master Capra painstakingly sorted through the many claims and allegations in the operative complaint. Claims that were not adequately pleaded were dismissed "with prejudice." Other claims were narrowed in significant respects. Those rulings shaped everything that has happened since—the fact and expert discovery, the expert-related motion practice, and the motions for summary judgment decided by Special Master Capra and set for hearing before Judge Rakoff later this week. At the pleading stage, of course, Judge Rakoff and Special Master Capra *did* consider whether Plaintiffs should be allowed to amend, based on the only request to amend that was before them—a proposed Second Amended Complaint offered by Plaintiffs "should the Court determine that [their] Amended Complaint is in any way insufficient." Opp. to Mot. to Dismiss, MDL Dkt. No. 299, at 45 (Mar. 16, 2009). That pleading did not purport to do anything like the massive rewrite that Plaintiffs have now undertaken. Any attempt to cure the "insufficien[cies]" now—four years and sixteen R&Rs later—makes a mockery of the entire process.

For the Mayer Brown and Grant Thornton Defendants, this proposed amendment would be wildly prejudicial, particularly in view of the imminent trial. The new and expanded claims

against these Defendants would require new motions to dismiss, new answers, extensive fact and expert discovery, new summary judgment motions, and potentially new parties as well. Even preparing a responsive pleading could take weeks, given the sorry state of the proposed amended pleading. This is hardly a "short and plain statement" of the claim for relief. *See* Fed. R. Civ. P. 8 (a)(2). Its paragraphs are not numbered consecutively; they run 1–1534, then 1–390, and then 1535–1571. It has five different claims labeled as "Count I." *See* Ex. C (redline) pp. 222, 383, 404, 439, 574.[1] The "Counts" against one defendant are jumbled up with the substantive allegations against other defendants, with no discernible structure. *See id.* at Table of Contents. And the changes are so extensive that the redline shows page after page of solid red, making it virtually impossible to distinguish the many new factual allegations from those that were pleaded before and have been moved or changed in some way.

Despite the confusion, however, we have been able to identify numerous respects in which the allegations are either new or flatly contrary to prior rulings by the Court, so that allowing them would be completely out of the question. We set out five of the most glaring issues below (and reserve the right to address *all* new and changed allegations in motions to dismiss, in the event that an amendment is allowed):

   1.   **Claims Based on Loss of Segregation.** The proposed amendment purports to add new claims and revive dismissed claims against the Mayer Brown and Grant Thornton Defendants based on the movement of SMFF's excess cash from Refco LLC to RCM (the "SPhinX fraud") and on Refco's "upstreaming" of the excess cash from unsegregated, unregulated accounts. *See, e.g.*, Ex. C pp. 245–46, 469–70 (expanding claims to encompass

---

[1] Because the paragraphs are not numbered consecutively, this brief cites Plaintiffs' redline (Ex. C) by page number, not by paragraph number.

aiding and abetting the SPhinX fraud).[2]  Yet since the beginning—and throughout the motions to dismiss, fact and expert discovery, and summary judgment—Defendants have conducted this litigation with the clear understanding that such claims would *not* be part of the case against them.  At least half a dozen R&Rs have said so.  *See, e.g.*, Standing R&R at 32 (Feb. 3, 2010), *adopted* March 31, 2010 (claims for aiding and abetting fraud "implicate only the Refco fraud"); GT R&R at 17–19 (Dec. 16, 2011), *adopted* Mar. 28, 2012 (dismissing "with prejudice" any claims against Grant Thornton Defendants based on allegations that SMFF's excess cash at RCM should have been segregated).[3]  Plaintiffs themselves acknowledged as much just last month.[4]

In fact, when Plaintiffs' proposed expert witnesses attempted to charge Grant Thornton with wrongdoing relating to SMFF's loss of segregation, Special Master Capra devoted an entire R&R to the issue and recommended that their opinions be stricken, because they concerned claims that either had never been asserted or had been dismissed with prejudice.  *See generally*

---

[2] *See also, e.g.*, Ex. C pp. 246–50, 470–73 (allegations attempting to cure pleading deficiencies in claims for aiding and abetting conversion and breach of fiduciary duty); *id*. at 131, 138–40 (allegations against Mayer Brown Defendants based on RCM's alleged "repatriation" to the U.S.); *id*. at 303–25, 330–37, 554–63 (allegations against Grant Thornton Defendants based on segregation and Refco LLC's CFTC compliance).

[3] *See also, e.g.*, Primary Violations MTD R&R at 21 (Mar. 1, 2010), *adopted* May 4, 2011 (elaborating on distinction between "Refco fraud" and "SPhinX fraud"); SLUSA R&R at 16–20 (Sept. 5, 2011), *adopted in relevant part* May 10, 2012 (treating all claims against these Defendants as based solely on Refco fraud); GT R&R at 3–4 (Dec. 16, 2011), *adopted* Mar. 28, 2012 ("Plaintiffs do not claim that GT or Ramler had anything to do with the unauthorized transfers of SMFF cash from protected accounts at Refco LLC to RCM."); MB R&R at 5 (Jan. 17, 2012), *adopted* March 26, 2012 (fraud count against Mayer Brown does not include any claim "regarding the SPhinX Fraud, defined as unauthorized transfer of SMFF excess cash to RCM, and the Suffolk transactions, which were designed to maintain Refco control over SMFF cash"); *id*. at 15, 17 (dismissing with prejudice any claims against Mayer Brown based on allegations that SMFF excess cash at RCM should have been segregated).

[4] *See* Pls. Lim. Obj. at 20 n.7, MDL Dkt. No. 1849 (May 10, 2013) (claim against Grant Thornton Defendants is "grounded solely in the Refco Fraud" and is "distinct from and unrelated to any cause of action related to the violation of segregation requirements"; "[t]here is no claim" for aiding and abetting fraud against the Mayer Brown Defendants "regarding the SPhinX Fraud, defined as unauthorized transfer of SMFF excess cash") (citations and quotations omitted).

R&R on Mot. to Strike Certain Opinions by Wallace and Greenberger ("Expert Strike R&R") (Nov. 29, 2012), *adopted* Feb. 6, 2013.

Incredibly, Plaintiffs have now cut and pasted those stricken expert opinions directly into their proposed pleading. *See, e.g.*, Ex. C. pp. 541–54 (largely cutting and pasting from Part VI.D of the Wallace Report, which was stricken on the ground that it relates only to claims dismissed with prejudice); *see* Expert Strike R&R at 17–18 (striking Wallace Report Part VI.D). In at least one instance, Plaintiffs cut and pasted excerpts from the stricken expert reports without even taking the trouble to edit them to make them suitable for a complaint. *See, e.g., id*. at 314 (new ¶ 983, pasting Greenberger's statement: "I am told there are no such letters in evidence in this litigation; I assume therefore that no such letter ever existed."). In effect, Plaintiffs are attempting an end-run around the Court's prior rulings, when the time for seeking reconsideration of those rulings passed months ago. For Plaintiffs to try to slip these opinions into an amendment is an affront to Judge Rakoff's and Special Master Capra's careful decisions.

As Judge Rakoff has explained, once a claim has been dismissed with prejudice, leave to amend will be denied "'unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *In re Bisys Sec. Litig.*, 496 F. Supp. 2d 384, 386 (S.D.N.Y. 2007) (Rakoff, J.) (citations omitted), *aff'd Pub. Empl. Retirement Ass'n v. Pricewaterhouse Coopers LLP*, 305 Fed. Appx. 742, 745 (2d Cir. 2009). Plaintiffs have not shown any of those things here. Thus, the dismissed claims must stay dismissed. They cannot be revived on Plaintiffs' whim on the eve of trial.

**2.** **New Claims for Failure to Disclose "Hopeless Insolvency."** Plaintiffs also propose to add new claims and allegations relating to an alleged failure to disclose "hopeless insolvency." *See, e.g.,* Ex. C pp. 574–78 (new counts against Mayer Brown and Grant Thornton

Defendants, as well as against several already-dismissed defendants). Their admitted goal is to inject "the same 'indirect reliance' theory" into this case that the foreign exchange customers asserted in the case brought by the Refco Private Actions Trust ("PAT"). Ex. A at 2–3 (Letter from L. Beus to Special Master Hedges).

On this issue, Plaintiffs' motion reflects a surprising lack of candor. As they well know, this case survived the motions to dismiss only because Plaintiffs *disclaimed* the PAT's "indirect reliance" theory. At the pleading stage, Plaintiffs argued that this case and the PAT case were fundamentally different, and they prevailed on at least three important issues on that basis. *See*, *e.g.*, SLUSA R&R at 9–10 (Sept. 5, 2011) & Mem. Order at 15 & n.5 (May 10, 2012) (denying motion to dismiss based on SLUSA preclusion because of the many differences between the two cases, including that this case does not involve the same theory of "indirect reliance" and failure to disclose).[5] In short, drawing a clear distinction between the theories *was Plaintiffs' own idea*—and it is the very thing that allowed their claims to proceed. These prior arguments trigger judicial estoppel, and they put the lie to Plaintiffs' current suggestion that they "did not anticipate" that the Special Master would draw such a distinction. Mot. for Leave to Amend at 3.

Plaintiffs also neglect to mention that these same issues were decided against them by Special Master Capra just six weeks ago, in an R&R that is pending before Judge Rakoff right now. On summary judgment, Special Master Capra squarely rejected Plaintiffs' efforts to invoke the PAT theory. *See* R&R on Defs. Mot. for Summ. J. at 9–10 (Apr. 21, 2013). He held that it is

---

[5] *See also, e.g.*, Primary Violations MTD R&R at 10–11, 38, 41 (Mar. 1, 2010), *adopted* May 3, 2011 (because of the key factual differences between the cases, finding that Plaintiffs had alleged several primary violations that the FX customers in the PAT case could not allege); MB R&R at 10–12 (Jan. 17, 2012), *adopted* Mar. 26, 2012 (because of the differences in the fraud theories between the two cases, finding that Plaintiffs here could proceed with a claim against Mayer Brown even though the claims against Mayer Brown in the PAT cases were dismissed with prejudice for lack of substantial assistance).

"far too late" for Plaintiffs to adopt it, and he cited several of the facts that make that theory inapplicable here in any event. *See id.* at 9–10 & nn. 6, 7. Objections to this R&R are fully briefed and will be argued later this week. Plaintiffs cannot circumvent the Special Master's substantive rulings merely by proffering an amendment to their complaint.

Even aside from judicial estoppel, Plaintiffs' proposed change in theory would cause tremendous prejudice without any conceivable justification. The burden is on Plaintiffs to provide an adequate explanation for their delay in bringing the motion for leave to amend. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (leave to amend may be denied if there is inordinate delay, no satisfactory explanation is given, and prejudice would result; the burden is on the movant to provide an explanation).[6] If Plaintiffs were really in the same position as the PAT customers (and as a matter of law, they are not), they should have asserted this theory when the PAT customers did—at the pleading stage. In fact, more than two years ago, these Plaintiffs filed a brief before Judge Rakoff stating that a motion for leave to add this theory "will be submitted *forthwith*." *See* Pls. Obj. to PAT Standing R&R, MDL Dkt. No. 1064, at 10 (Feb. 24, 2011) (emphasis added). No motion came. Instead, Plaintiffs allowed the Amended Complaint to stand, and Defendants answered it and proceeded on the basis of that complaint through the remaining fact discovery, all expert discovery, and motions for summary judgment. Changing the theory now would require all of that to be reopened. *See* Defs. Resp. to Pls. Lim. Obj., MDL Dkt. No. 1864, at 11–12 (May 29, 2013) (describing some of the motions and expert reports that would have been necessary had this theory been asserted earlier).

---

[6] *See also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice") (citation omitted), *cited in Krys v. Aaron* Order at 3; *Priestley v. American Airlines, Inc.*, 1991 WL 64459, at *2 (S.D.N.Y. 1991) (no amendment allowed where "plaintiff has utterly failed to justify his delay in moving to amend the complaint" and "the proposed claim will significantly increase the scope of discovery when the case is ready for trial").

7

It is far, far too late for that. *See Diplomatic Man*, 2006 WL 2434933, at *3 (Rakoff, J.) (denying leave to amend where plaintiffs moved only after close of discovery and briefing on summary judgment).[7] A plaintiff cannot sit idly by and allow his opponents to spend millions of dollars on discovery and motion practice concerning the theory he asserted at the pleading stage, only to replace that theory with a new and fundamentally different one on the eve of trial.

3. **New "Fraud" Claims.** While the operative complaint charges these Defendants only with aiding and abetting a fraud ***by Refco***, the proposed amendment asserts brand new claims for fraud ***by the Mayer Brown and Grant Thornton Defendants themselves***. *See* Ex. C pp. 239 (first Count V), 468 (Count X), 575 (fifth Count II). If Plaintiffs truly believe they can assert these claims within the limits of Rule 11, the claims would still require new motions to dismiss and/or motions for summary judgment. The parties in this case have never had any need to brief the question whether SMFF and PlusFunds actually relied on any false statement by Mayer Brown or Grant Thornton (they clearly did not), and the many R&Rs and orders on the motions to dismiss and for summary judgment did not address that question either. Nor have the parties ever addressed whether Grant Thornton and Mark Ramler somehow owed SMFF and PlusFunds a duty to disclose, as required for a claim of fraud by omission. *See, e.g., id*. at 575 (fifth Count II). Again, Plaintiffs have made no effort to tie these new claims to anything new they have learned over the last five years—or to explain why, ***if*** they can assert such a claim in good faith, they could not have done so in their first complaint five years ago.

---

[7] *See Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2nd Cir. 1985) (denying amendment "given the fact that discovery had already been completed and Cola had already filed a motion for summary judgment."); *Wilcox v. Cornell Univ.*, 2012 WL 4903181, at *2 (S.D.N.Y. 2012) (even when motion was filed before close of discovery, denying leave to amend because it would necessitate further discovery and defendants had already begun preparing for summary judgment); *Bymoen v. Herzog, Heine, Geduld, Inc.*, 1991 WL 95387, at *2 (S.D.N.Y. 1991) (no amendment when parties had already sought summary judgment).

8

4.      **New Claims based on Audit Opinions Issued by Arthur Andersen.**  The proposed amendment would also dramatically expand the claims against Mark Ramler by injecting claims of fraud and substantial assistance dating back to audit opinions issued by his former firm, Arthur Andersen.  *See, e.g.*, Ex. C. pp. 239–46 (counts for fraud and aiding and abetting fraud).  Plaintiffs have named Mr. Ramler personally as a defendant in this case, even though, after years of investigation into the facts at Refco by the Examiner, the Department of Justice, and civil regulators, *no one else* has asserted any claim or charge against him.

As Special Master Capra and Judge Rakoff have repeatedly held, Plaintiffs' claims against Mr. Ramler run from April 2003, when Grant Thornton issued its first Refco audit opinion, which "is the first act properly alleged as GT's *and Ramler's* substantial assistance." GT R&R at 17 (Dec. 16, 2011) *adopted* Mar. 26, 2012 (emphasis added).  When Plaintiffs suggested to Judge Rakoff that their claims should be construed more broadly, he soundly rejected that view.  Supp. Order at 2 (Apr. 5, 2012).   He also took them to task for departing from the usual procedure for motions in this case, admonishing them to present any argument for expanding their claims "to the Special Master" in the first instance.  *Id*.  Plaintiffs did not follow through on Judge Rakoff's direction and instead stood on their current complaint.

To allow Plaintiffs to expand their case against Mr. Ramler now would be outrageous. Plaintiffs deposed Mr. Ramler in early 2009.  Even if they had learned something new in that deposition—and they do not claim they did—there is no conceivable justification for waiting *four years* to file a motion for leave to amend.  And in the sixteen months since Plaintiffs declined Judge Rakoff's direction to take any requests to the Special Master, Mr. Ramler and Grant Thornton have answered the Amended Complaint, completed fact and expert discovery, and obtained rulings from Special Master Capra on one expert motion and two sets of motions

9

for summary judgment. All of that rested on the understanding that the claims against Mr. Ramler are focused exclusively on Grant Thornton's audit opinions, beginning in April 2003. *See, e.g.,* R&R on Defs. Mot. for Summ. J. at 12 (Apr. 21, 2013) (reflecting this limitation).

It would be tremendously unfair to allow these claims to be expanded now. Arthur Andersen has never been a party in this case, and the quality of its own audits and audit opinions has never been at issue, either in discovery or in motion practice. To add such claims, the Court would need to reopen the litigation all the way back to the pleadings—to allow a motion to dismiss the new claims as time-barred, to allow Grant Thornton to establish through motions that it cannot be held liable based on any statement by a different firm, to allow new fact and expert discovery, and potentially to allow Mr. Ramler to implead Arthur Andersen itself. It would be utterly impossible to accomplish all of that in time for the September 4 trial.

**5.     New Claims Against the Mayer Brown Defendants.**  Similarly, the proposed amendment would dramatically expand the claims against Mayer Brown—including into areas that have already been ruled off-limits. Most glaringly, the amendment includes new allegations about Mayer Brown's alleged work on a Proceeds Participation Agreement ("PPA") connected to Refco's 2004 LBO transaction. *See* Ex. C pp. 144–46. Not only did these allegations not appear in the prior complaints, but Plaintiffs previously admitted that their case against Mayer Brown is ***not*** based on the PPA, and Special Master Capra specifically ruled that the PPA "is not pertinent to the Plaintiffs' claims here at all." *See* R&R on Pls. Mot. for Summ. J. against the Mayer Brown Defs. ("Preclusion R&R") at 6 (Mar. 25, 2013); Pls. Obj. to Preclusion R&R at 3–8 (Apr. 12, 2013) (acknowledging distinction between Refco Fraud and PPA fraud theories, but never claiming injury from the nondisclosure of the PPA or contending that any involvement in its nondisclosure could constitute actionable misconduct by any Mayer Brown Defendant).

The facts surrounding the PPA were explored in great detail in discovery years ago, in depositions taken in 2009 in which Plaintiffs' counsel fully participated. Plaintiffs obviously made a conscious decision not to make the PPA part of their case during the pleading stage. The Special Master issued his first pleading-stage R&R in early 2010. After the motions to dismiss were resolved, Mayer Brown in 2012 submitted substantial expert reports regarding the conduct of its lawyers. Those reports do not discuss the PPA because, at the time they were submitted, the PPA was not part of this case. If Plaintiffs were allowed to amend their complaint to add allegations regarding the PPA, expert discovery would have to be redone. The PPA allegations are not the only new allegations that raise this issue; they are merely a striking example.

In addition, Plaintiffs' allegations relating to the PPA, and many of Plaintiffs' other new allegations, are barred by the Court's "net deposits" order that holds that conduct occurring after March 12, 2004 caused no injury to SMFF. *See, e.g.*, Preclusion R&R at 9–10. All of Mayer Brown's legal work concerning the LBO transaction, including the alleged nondisclosure of the PPA, occurred well after that date. If this amendment were permitted, the Mayer Brown Defendants would be compelled to file new motions to dismiss on that basis.

\* \* \*

The Special Master's initial ruling was absolutely correct: "[T]here is no question" that an amendment would cause "substantial prejudice" to the Mayer Brown and Grant Thornton Defendants. Tr. of 5/16/13 Hrg. at 9. As it turns out, the proposed amendment is far more wide-ranging and prejudicial than anyone could have imagined, and Plaintiffs make no serious attempt to justify it, particularly in the face of an imminent trial. We respectfully ask that the Special Master deny the motion and grant whatever other relief he finds appropriate, including an award of costs for the defendants in analyzing and responding to Plaintiffs' submission.

Dated: Chicago, Illinois  
       June 4, 2013

**WINSTON & STRAWN LLP**

By:   /s/ Linda T. Coberly

Linda T. Coberly  
Bruce R. Braun  
Catherine W. Joyce  
35 W. Wacker Drive  
Chicago, Illinois 60601  
Tel: (312) 558-5600  
Fax: (312) 558-5700

Luke A. Connelly  
200 Park Avenue  
New York, New York 10166  
Ph: (212) 294-6700  
Fax: (212) 294-4700

*Attorneys for Defendants*  
*Grant Thornton LLP and Mark Ramler*

Dated: Washington, DC  
       June 4, 2013

**WILLIAMS & CONNOLLY LLP**

By:   /s/ Craig D. Singer

John K. Villa  
George A. Borden  
Craig D. Singer  
725 Twelfth Street, N.W.  
Washington, DC 20005  
Tel: (202) 434-5000

*Attorneys for Defendant Mayer Brown LLP*

| | |
|---|---|
| Dated: New York, NY<br>      June 4, 2013 | **COOLEY LLP** |

By:    /s/ William J. Schwartz

William J. Schwartz
Jonathan P. Bach
Reed A. Smith
1114 Avenue of the Americas
New York, NY 10036-7798
Tel: (212) 479-6000

*Attorneys for Defendant Joseph P. Collins*

**CLAYMAN & ROSENBERG**

By:    /s/ Amy E. Millard

Charles E. Clayman
Amy E. Millard
305 Madison Avenue, Suite 1301
New York, NY 10165
Tel: (212) 922-1080

*Attorneys for Defendant Paul Koury*

13