USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/6/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re REFCO INC. SECURITIES LITIGATION — 07 MDL 1902 (JSR)

KENNETH M. KRYS, et al.,

Plaintiffs,

-v-

CHRISTOPHER SUGRUE, et al.,

Defendants.

08 Civ. 3065 (JSR)
08 Civ. 3086 (JSR)

KENNETH M. KRYS, et al.,

Plaintiffs,

-v-

DEUTSCHE BANK SECURITIES, INC., et al.,

Defendants.

10 Civ. 3594 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

On December 26, 2012, the Court adopted, by "bottom-line" Order, certain of the recommendations and reasoning contained in Special Master Capra's October 17, 2012, Report and Recommendation to the Court (the "Net Deposit R&R"). The Court, however, disagreed in part with the Special Master's recommendations and adopted his recommendation-in-the-alternative that the Court grant the motions of PricewaterhouseCoopers LLP ("PwC"); Credit Suisse Securities (USA) LLC ("Credit Suisse"); Merrill Lynch, Pierce, Fenner & Smith, Incorporated, as successor-by-merger to Banc of America Securities LLC ("BAS"); and Deutsche Bank Securities, Inc. ("DBSI") for

summary judgment on the remaining claims against them.[1] This Memorandum Order explains the Court's reasons for departing from the Special Master's primary recommendation with respect to these defendants and for granting these defendants' motions for summary judgment on the remaining counts against them. The Court presumes the parties' familiarity with the several R&Rs, memoranda, and orders previously issued in the Refco cases, as well as the factual background of the underlying Refco fraud.

The above-named defendants' motions for summary judgment focus on the issues of proximate causation and damages in connection with their alleged role in aiding and abetting the "Refco fraud," i.e., the misrepresentation of Refco's financial condition. Their motions arise from the fact, confirmed by discovery, that SPhinX Managed Future Fund SPC ("SMFF"), on whose behalf plaintiff brings these actions, withdrew more cash from Refco entities than it deposited in the time period between Refco's engagement of these defendants to allegedly assist its fraudulent IPO and LBO and the subsequent revelation of the fraud. Specifically, in their Rule 56.1 statements and in oral argument before the Special Master, the parties agreed that for each of the

---

[1] As a result of several prior orders, all but one claim in each of the applicable complaints against the moving defendants has been dismissed with prejudice. The remaining claim for "aiding and abetting fraud" is Count XVII of the Amended Complaint against PwC; Count XXII of the Amended Complaint against Credit Suisse and BAS; and Count IV of the Complaint against DBSI.

above-named defendants, SMFF's net amount on deposit at Refco decreased between the defendants' engagement to assist with the Refco LBO and IPO and the date of SMFF's transfer of approximately $312 million from Refco (the "October transfer") after the fraud was publicly disclosed.[2] In particular, between the date on which PwC was first engaged to provide advisory services and SMFF's October transfer, the balance of cash SMFF held in its Refco accounts declined by $117,173,820. Defs.' 56.1 Statement ¶ 11. Similarly, between the time of the engagement of Credit Suisse, BAS, and DBSI as joint book runners and initial purchasers of private placement notes in the LBO transaction and the October transfer, SMFF's net amount of cash on deposit at Refco declined by $229,531,596. Id. ¶ 13. The parties also agree that the aggregate net declines were not composed entirely of withdrawals: offset against SMFF larger withdrawals are approximately $400 million in SMFF deposits, which, again, occurred after the fraud but before its public revelation. See Net Deposit R&R at 6, n. 9.

These facts are relevant to the moving defendants' motions for summary judgment because the remaining count against

[2] On or about October 12, 2005, after the Refco fraud was publicly disclosed but just before Refco's Chapter 11 filing, SMFF transferred $312,046,266 million from its Refco accounts. Refco's bankruptcy estate immediately filed an action to claw back that transfer as an impermissible preference, an action which SMFF later settled. In the above-captioned cases, plaintiffs seek to recover that settlement amount from defendants as damages for aiding and abetting the Refco fraud.

them alleges that they joined the Refco fraud in medias res. That is to say, they are alleged to have aided and abetted the concealment of Refco's financial condition, not at the beginning of SMFF's deposits at Refco entities, but rather in their assistance in the preparation of Refco's LBO and IPO, the earliest of which occurred on August 5, 2004. See Report and Recommendation of the Special Master on Motions to Dismiss by Defendants PriceWaterhouseCoopers and Mari Ferris ("PwC R&R") at 17-18. As the Special Master notes, prior R&Rs, as adopted by orders of this Court, have held "time and time again" that the amount SMFF held at Refco entities before these particular defendants' alleged aiding and abetting began is "not compensable." See Net Deposit R&R at 5. This is because Refco, at the moment these defendants allegedly joined the fraud, was already "hopelessly insolvent," and the alleged fraud by the moving defendants "could not have caused SMFF to *retain* assets after the date of any particular defendant's aiding and abetting." Net Deposit R&R at 3 (emphasis in original). Indeed, the Special Master's PwC R&R, adopted by the Court on October 24, 2011, expressly rejected the argument that the aiding-and-abetting defendants could be held responsible for causing SMFF to "keep" the funds deposited prior to the LBO because "the information that the Plaintiffs insist should have been disclosed

(and that PwC helped to conceal) was in the context of public statements." PwC R&R at 22. Thus:

> Assuming that, at the time of the LBO, R[efco] C[apital] M[arkets] did disclose to its then-customers that it was hopelessly insolvent, there is nothing that those customers could have done at that point to get their money back. The announcement of hopeless insolvency would have triggered a run on RCM, in which all the company's customers would have sought to recover their funds prior to the inevitable bankruptcy filing. Because RCM, by the terms of the . . . complaint, had no ability to pay back the money that was upstreamed at the time of the LBO, the . . . customers would have been unable to recover their funds. And those who were paid by RCM, if any, would have seen those funds recovered by the bankruptcy trustee as a voidable preference for the benefit of the estate.

PwC R&R at 22 (quoting Private Actions Trust R&R at 16). These holdings remain law of the case, and the Court does not disturb its earlier rulings (nor does the Special Master suggest that the Court should disturb the rulings) that cash deposited before the date of the moving defendants' alleged wrongdoing is not "compensable." In short, "deposits placed before the wrongdoing are out of the case." Net Deposits R&R at 4-5.

The Court and the Special Master part ways, however, regarding the method of calculating any remaining injury proximately caused by the alleged aiding and abetting -- that is, the way in which SMFF's deposits and withdrawals should be netted against each other to determine whether these defendants' concealment of the fact that Refco was hopelessly insolvent (and therefore delayed its inevitable collapse) caused SMFF an injury.

It is settled law that, in an action for fraud under New York law, plaintiffs are limited to recovering their actual losses, defined as "actual pecuniary loss sustained as the direct result of the wrong." Reno v. Bull, 226 N.Y. 546 (1919). Thus a plaintiff may not "recover for losses, but ignore his profits, where both result from a single wrong." Abrahamson v. Fleschner, 568 F.2d 862 (2d Cir. 1977) (emphasis added). An aiding and abetting fraud claim will require a similar showing, since, among other elements, the plaintiff must prove "substantial assistance" in the achievement of the primary fraud, which in turn requires a showing that "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." UniCredito Italiano SpA v. JPMorgan Chase Bank, 288 F.Supp.2d 485, 502 (S.D.N.Y. 2003). See also S.E.C. v. Apuzzo, 689 F.3d 204, 2012 (2d Cir. 2012).

The parties and the Special Master agree in principle with the view that fraud-related deposits must be "netted" against withdrawals in the damages calculation, and that to survive summary judgment SMFF must show that the defendants proximately caused SMFF to experience a net loss. The Special Master, however, found defendants' showing on summary judgment insufficient because "SMFF was harmed when SMFF cash was deposited at Refco in reliance on the Defendants' wrongdoing in the LBO and/or IPO. When those deposits were made in such reliance, and *that* money was not withdrawn before

Refco's bankruptcy, . . . [p]laintiffs have sufficiently pled a cause of action for those losses." Net Deposit R&R at 5 (emphasis in original). The Special Master continued that "[t]he relevant figure for damages then is not the net difference between the 'pre-wrong amount' and the amount in October 2005 . . . [i]t is the 'post-wrong' amount that was not withdrawn by the time of Refco's collapse." Id. at 5-6.

Thus, the Special Master would, in effect, deem post-LBO and IPO withdrawals as first offsetting deposits made before the aiding-and-abetting defendants arrived on the scene. But, given the Special Master's and the Court's prior rulings that deposits made before these defendants aiding-and-abetting are "legally irrelevant" to the determination of these defendants' wrongdoing, it is not enough to say that it is "self-evident" that "[w]hen . . . deposits were made in . . . reliance [on the fraud], and *that* money was not withdrawn before Refco's bankruptcy, . . . [p]laintiffs have sufficiently pled a cause of action for those losses." Id. at 4-5. SMFF's cash position at Refco at the moment of the alleged wrongdoing by the defendants was both entirely fungible and practically fictive, since, at the earliest moment the defendants allegedly aided and abetted the Refco fraud, the total evaporation of SMFF's cash position awaited only the public revelation of Refco's hopeless insolvency. The Court discerns no

principled way to earmark the cash SMFF withdrew after the alleged aiding and abetting as "pre-wrongdoing" cash in order to evade the conclusion that the aiders and abetters did not proximately cause a net loss after they allegedly aided the fraud. This is especially true given the foregone conclusion, affirmed in several R&Rs and orders of this Court, that pre-aiding-and-abetting cash would have been lost upon the public revelation of Refco's hopeless insolvency, regardless of these defendants' actions. Indeed, the only proximate result of these defendants' aiding and abetting was to delay Refco's demise, during which time SMFF made fraud-induced deposits and what were, in effect, unwitting fraud-financed withdrawals.[3] Both SMFF's enticement to deposit and ability to withdraw cash were the result of these defendants' single wrong of aiding the concealment of Refco's dismal financial situation.

In lieu of case law, the Special Master relies on two hypotheticals and the law of the case doctrine to recommend denial of defendants' motion. Neither compels the result plaintiffs suggest. The Court does not dwell on the Special Master's hypotheticals, as each materially alters the undisputed facts posed by this motion for summary judgment: they do not address the

[3] Given the Court's prior rulings that Refco Capital Markets was already hopelessly insolvent when the defendants' allegedly joined the fraud as aiders and abettors, there is some truth to defendants' argument that their alleged fraud underwrote SMFF's ability to unwittingly decrease, on a net basis, its exposure to Refco's hopeless insolvency before the inevitable run on Refco.

circumstance where, as here, the plaintiffs' losses and gains are the proximate result of a single alleged wrong of aiding and abetting the fraudulent concealment of Refco's financial condition. See Net Deposits R&R at 6. Thus, the Special Master's hypotheticals do not answer the relevant causal question of whether these defendants' alleged aiding and abetting made plaintiffs worse off than they otherwise would have been if, counterfactually, Refco's fraud was disclosed at the moment they assisted Refco in preparing its IPO and LBO. Instead, the hypotheticals suggest that the Court reason from the intuition that something odious occurred, and to infer causation of injury from the allegation of deceptive behavior. But on the undisputed facts of this case, both SMFF's so-called "actionable" deposits and its ability to make post-fraud withdrawals share the same causal nexus to defendants' concealment of Refco's hopeless insolvency. Had the former outstripped the latter, or had the defendants' ability to make those withdrawals been the proximate result of something other than the alleged wrongdoing, defendants' motion for summary judgment would have properly been denied. Cf. Abrahamson, 568 F.2d at 878-79.

In their papers regarding defendants' objection to this portion of the Special Master's R&R, the plaintiffs do not revive the Special Master's hypotheticals. Instead, they press the Special Master's finding that this Court has already rejected defendants'

argument and thus that this motion is precluded by the prudential and discretionary law-of-the case doctrine. It is true that, as the Special Master and the plaintiffs note, PwC included a terse form of its "net deposit" argument in its objection to this Court to the Special Master's PwC R&R. See PwC's Limited Obj. to the Report and Recommendation of the Special Master, No. 08 Civ. 3065, ECF No. 582, at 12-13. However, when the Court adopted the PwC R&R on October 24, 2011, it expressed no view on PwC's objection, but simply noted that the Court would not, absent a "most compelling reason" consider arguments not raised before the Special Master in the first instance.

Thus the Court's October 24, 2011, Order did not expressly reject the argument now raised on this summary judgment motion in declining to decide an argument first raised in objections to the PwC R&R, nor did the Court's adoption of the PwC R&R regarding PwC's motion to dismiss "necessarily imply" such a holding for the instant summary judgment motion. See generally DeWeerth v. Baldinger, 38 F.3d 1266, 1271 (2d Cir. 1994) (noting that law of the case does not apply unless the issue was decided "expressly or by necessary implication."). In any event, the Court reviews the Special Master's conclusions on this motion de novo, and, even if it were the case (contrary to fact) that this Court's prior order reached these issues, "[a]pplication of the law of the

case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. 2001).

Plaintiffs also urge this Court to adopt the R&R on the alternative ground that the proper approach to netting SMFF's deposits against its withdrawals requires tracing of deposits by way of a "first-in-first-out" (or "FIFO") mode of loss accounting.[4] If applicable, the FIFO principle would, in effect, buttress the Special Master's designation of SMFF's "post-wrongdoing" withdrawals as first offsetting "pre-wrongdoing" deposits. Specifically, first-in-first-out matching of deposits to withdrawals would obliquely support the Special Master's finding that SMFF's post-fraud withdrawals did not relate to "actionable deposits" because "*that* money" -- i.e., the "actionable deposits" -- was never withdrawn in the churn of SMFF's post-aiding-and-abetting cash deposits and withdrawals.

Because, however, the pre-fraud deposits are, in the Special Master's words, "out of the case," the Court declines to adopt a FIFO approach, or more generally to trace post-fraud withdrawals to pre-fraud deposits before it traces them to "actionable" deposits. Indeed, the Court sees no reason to make use

[4] The Special Master, by contrast, disavowed the need to apply any tracing rule to decide the motion. See Net Deposit R&R at 7 n. 13.

of a doctrine that was employed in the cases plaintiffs cite to resolve the here inapt questions of retiring antecedent debt, solely as a means to revive the relevance of SMFF's "pre-wrong" deposits. To do so would ignore the fact that as a proximate effect of the alleged aiding and abetting, plaintiffs were able to improve their cash exposure to the hopelessly insolvent Refco entities.[5]

Accordingly, the Court hereby confirms its bottom-line Order adopting the Special Master's Report and Recommendation in part, but granting the motions of PricewaterhouseCoopers LLP; Credit Suisse Securities (USA) LLC; Merrill Lynch, Pierce, Fenner & Smith, Incorporated, as successor-by-merger to Banc of America Securities LLC; and Deutsche Bank Securities, Inc. for summary judgment on the remaining claims against them in the above-captioned cases.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
June 6, 2013

[5] The Court notes in passing that courts in this district that have considered applying a "FIFO method" to match purchases of stock with sales of stock in order to calculate loss in the securities fraud context have expressed a "very strong preference" for the opposite approach -- that is, the last-in-first-out method -- in calculating loss. See In re CMED Sec. Litig., No. 11 Civ. 9297 (KBF), 2012 WL 1118302, *3 (S.D.N.Y. Apr. 2, 2012). But as in plaintiffs' discharge of antecedent debt case law, that context is similarly inapt to the question before the Court.