UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re REFCO INC. SECURITIES LITIGATION      :

---------------------------------------------------------------X

        Case No. 07-MD-1902 (JSR)

This Document Relates to:

---------------------------------------------------------------X

KENNETH M. KRYS, et al.,                          :

                                          :

                          Plaintiffs, :

                                          :

               -against-                               :

                                          :

CHRISTOPHER SUGRUE, et al.,                   :

                                          :

              Defendants. :

                                          :

---------------------------------------------------------------X

        Case No. 08-CV-3065 (JSR)
        Case No. 08-CV-3086 (JSR)

**REPLY MEMORANDUM
SUPPORTING MOTION TO EXCLUDE
THE OPINIONS AND TESTIMONY OF
R. DAVID WALLACE**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6882

35 West Wacker Drive
Chicago, Illinois  60601
Tel: (312) 558-5600

*Attorneys for Defendants Mark Ramler and
Grant Thornton LLP*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

RESPONSE TO PLAINTIFFS' "FACTS" ........................................................................... 2

ARGUMENT ........................................................................................................................ 5

    A.    Mr. Wallace's "knowledge" opinions must be excluded. ................................ 5

    B.    Mr. Wallace never disclosed any opinions about what a
           reasonable auditor at the time would have known. ......................................... 6

    C.    Mr. Wallace's opinions about GAAS are irrelevant and prejudicial ............. 7

    D.    Mr. Wallace did not disclose other opinions. ................................................ 9

    E.    Plaintiffs admit that Mr. Wallace cannot testify to the facts. ........................ 9

    F.    The non-disclosure of the Suffolk Loans in 2005 is irrelevant ..................... 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256, 266 (2d Cir. 2002)..................................................................................2

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004)...................................................................8

*In re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370, 385 (S.D.N.Y. 2007)...................................................................8

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558, 677 (S.D.N.Y. 2007)..................................................................10

*SEC v. Price Waterhouse*,
   797 F. Supp. 1217, 1240 (S.D.N.Y. 1992)...................................................................8

*SEC v. Tourre*,
   --- F. Supp. 2d ---, 2013 WL 3089031, at *7 (S.D.N.Y. June 18, 2013) ..................7
   2013 WL 3089031, at *10 .........................................................................................10

*Ultramares Corp. v. Touche Niven & Co.*,
   255 N.Y. 170, 189 (1931) ...........................................................................................8

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ............................................................................................1, 5, 10

## INTRODUCTION

**No** expert can testify about what someone actually "knew." *See* Defs.' Mem. 10–11. Plaintiffs have conceded as much in their own expert motions. As they explain, allowing an expert to draw conclusions about what a defendant knew "would allow him impermissibly to 'argue the client's cause from the witness stand'" and would "constitute improper fact finding, usurping the role of the jury."[1]

Yet that is exactly what Plaintiffs' expert David Wallace plans to do. His "Summary of Expert Opinions" and his "Findings in Support" consist almost entirely of assertions about what he believes Mark Ramler and Grant Thornton "knew" or "consciously" avoided. *See* Wallace Report pp. 1–2, ¶¶ 12–13 (Ex. B to Coberly Decl. dated 6/24/13). We urge the Court to review the report itself, or at least its table of contents (*id.*); its inappropriateness is obvious on its face.

Plaintiffs' brief does not deny that this is the gist of Mr. Wallace's proposed testimony. Instead, they defend his claimed omniscience based on "46 years of experience" and "numerous, uncontroverted facts" they say allow him to draw "a strong inference of 'knowledge.'" Pls.' Opp. 1. To begin with, the "facts" in Plaintiffs' brief are anything but "uncontroverted"; they are argumentative, misleading, and often outright false. But in any event, **no** facts can save Mr. Wallace's knowledge opinions, which are wholly improper under Rule 702.

Plaintiffs' fallback position is that Mr. Wallace should be allowed to opine about what a hypothetical auditor skilled in the art would have concluded under the circumstances. Pls.' Opp. 1. But **that** opinion was never disclosed. Plaintiffs do not cite a single statement in Mr. Wallace's report or deposition in which he opines that based on the same information, a hypothetical experienced auditor would have known that Refco was committing fraud. What he

---

[1] *E.g.*, Pls.' Mem. in Support of Mot. to Preclude Testimony by Defense Expert Patrick Connors at 2, 9 (pending) (directed against expert proffered by the Mayer Brown Defendants).

does instead is purport to draw an inference, based "on [his] review of the record," about what *these* auditors knew.  Wallace Dep. 441:15–19 (Ex. C to Coberly Decl. dated 6/24/13).  To the extent he considers professional standards at all, he merely looks (in hindsight) for any "failure to perform GAAS" and concludes "that's actual knowledge."  *Id*. at 427:22–25.  This is both wrong and improper.  There is nothing "expert" about reviewing evidence and drawing inferences about what a defendant knew.  And a failure to comply with professional standards is *not* actual knowledge, nor is it conscious avoidance.  *See* Defs.' Mem. 15–20.  Plaintiffs and their expert cannot be permitted to mislead the jury on this critical point.

### RESPONSE TO PLAINTIFFS' "FACTS"

In an apparent attempt at distraction, Plaintiffs' brief features page after page of argument about the "facts" with barely any citation to Mr. Wallace's report or the record.  Pls.' Opp. 2–3, 6–17.  For several pages, in fact, Plaintiffs give no citations at all, presenting what we can only imagine is a preview of counsel's closing argument.   This discussion is entirely irrelevant to the question at hand:  whether Mr. Wallace's disclosed opinions are proper and admissible.  As the Second Circuit has explained, whether an expert's factual conclusions impermissibly intrude on the province of the jury has nothing to do with anyone's belief "as to the correctness of those conclusions."  *Amorgianos v. Nat'l R.R. Passenger Corp*., 303 F.3d 256, 266 (2d Cir. 2002).

Plaintiffs' account of the facts is also selective, misleading, and in places simply false.  For example, Plaintiffs falsely suggest that Mr. Ramler has admitted knowing of the fraud.  On the second page of their opposition, Plaintiffs refer to so-called round trip loans ("RTLs") in the late 1990s and assert that "Mr. Ramler knew the sole purpose of the RTLs was fraud," quoting his deposition.  Pls.' Opp. 2.  But the cited testimony was about what Mr. Ramler knows *today*.  The questioner had asked Mr. Ramler about whether he was familiar with the phrase "round-trip

loans" as it relates to Refco, and Mr. Ramler explained he had "heard it used in the media." *See* Ramler Dep. 472:22–473:2 (attached as Ex. A to Decl. of C. Joyce, filed today). The questioner then asked about Mr. Ramler's understanding of certain RTLs involving Refco customer Liberty Corner. *Id*. at 474:4–5. Defense counsel objected and said, "So the record is clear, you're asking him what his understanding is today?" *Id*. at 474:17–19. The questioner responded "Yes," and the examination proceeded. *Id*. at 474:20–21. After a break, the questioner returned to the topic, saying, "You said before we broke that the purpose, the business purpose of the Liberty Corner transactions . . . was fraud." After another objection, Mr. Ramler confirmed his earlier answer. *Id*. at 540:10–22, *quoted in* Pls.' Opp. 2. To suggest that this testimony shows contemporaneous knowledge of the fraud is highly misleading, to say the least.

There is no evidence that Mr. Ramler knew about the fraud at ***any*** time before September 2005, when he and Grant Thornton helped to bring it to light. In fact, the record evidence is directly to the contrary. Refco's corrupt officers went to great lengths to keep Mr. Ramler and Grant Thornton in the dark, colluding with others both inside and outside Refco. The company's three most senior officers were convicted on charges predicated on "material misstatements to auditors" in violation of 15 U.S.C. §§ 78m & 78ff, and they have admitted that deceiving Grant Thornton was a central focus of their scheme. *See* Grant Thornton Defs.' Resp. to Pls. 56.1 St. ¶¶ 3, 5 (Jan. 22, 2013). And in the nearly eight years since the Refco fraud was disclosed, ***not one*** of the regulators or prosecutors who have pored over the events at Refco has ever brought a charge against Grant Thornton or Mr. Ramler—even under a negligence standard.

Plaintiffs' opposition brief also tries to obscure another critical fact: ***the acts, audit opinions, and alleged conscious avoidance by the auditing firm of Arthur Andersen are not at issue in this case.*** Arthur Andersen served as Refco's auditor until 2002; Grant Thornton

became Refco's auditor beginning with the 2003 audit.  When Mark Ramler joined Grant

Thornton, he continued to work on the Refco audits, but the rest of the Grant Thornton audit

team was entirely new to the engagement.[2]  Many of the "facts" Plaintiffs find so compelling

relate to questions that supposedly should have been asked by Arthur Andersen, or by Mark

Ramler when he was in Arthur Andersen's employ.  *See, e.g.*, Pls.' Opp. 9 (referring to an

account statement "reviewed by Ramler and Arthur Andersen during its fiscal year 2000 audit"[3]

and to a never-disclosed opinion by Mr. Wallace about the procedures that a reasonable auditor

in that situation "would have implemented").  In fact, Plaintiffs' trial exhibit list currently

includes thousands upon thousands of pages of work papers from the Arthur Andersen audits.

*See* Pls.' Am. Trial Exh. List (Aug. 1, 2013) (attached as Ex. B to Joyce Decl.).

This too is improper.  On at least five occasions, this Court and the Special Masters have

made clear that Plaintiffs' claims—even against Mr. Ramler personally—go back at the earliest

only to April 30, 2003, the date of the first audit opinion issued by Grant Thornton.[4]  Just two

months ago, Special Master Hedges rejected an attempt by Plaintiffs to ***add*** claims based on

alleged misconduct and conscious avoidance while Mr. Ramler was at Arthur Andersen.  *See*

Mot. for Leave to Amend, Ex. B (proposed Third Am. Compl.) ¶¶ 748 *et seq.* (filed May 30,

2013) (Dkt. No. 943); *see* 6/11/13 Order at 2 (Dkt. No. 961) (denying the motion).  Plaintiffs'

continued insistence on injecting Arthur Andersen's work into this case is mystifying—

particularly given the three short weeks the Court has allotted for trial.

---

[2] Plaintiffs' suggestion (at 2) that Mr. Ramler brought several former Andersen auditors with him
to the new audit team is also false (and not supported by any citation).

[3] It is undisputed that Mr. Ramler, senior audit partner on the engagement, was not personally
involved in these confirmations and did not see this account statement.  Ramler Dep. 401:14–23.

[4] *See, e.g.*, R&R on Mot. to Dismiss at 17 (Dec. 16, 2011), *adopted* Mar. 26, 2012; Supp. Order
at 2 (Apr. 5, 2012) (Dkt. No. 724); R&R on Defs. Mot. for Summ. J. at 12 (Apr. 21, 2013),
*adopted* June 26, 2013.

Similarly improper is Plaintiffs' throwaway accusation that Mr. Ramler and others spoliated documents.  In a footnote, Plaintiffs say that "Mr. Ramler and Grant Thornton's culpability is confirmed" because, in the days after the fraud was disclosed, they supposedly spent time "rewriting the workpapers from prior years."  Pls.' Opp. 13, n.6.  This is a gross distortion of the record.  As the evidence they cite makes clear, when the fraud at Refco was discovered, Grant Thornton collected all of its audit work papers and appropriately secured them for posterity, including for production in this MDL.  Every single document was preserved.  Before now, no plaintiff or expert in this MDL has ever suggested that any of this was improper—not even Mr. Wallace, who has no opinion on the subject.

Plaintiffs' efforts to distort the evidence—and their insistence on injecting irrelevant and time-consuming issues—do not bode well for the upcoming trial.  For now, however, their "factual" account should simply be ignored, as it has no bearing on the only question before the Court:  whether Mr. Wallace's testimony is proper and admissible.  As discussed below, it is not.

## ARGUMENT

A.    **Mr. Wallace's "knowledge" opinions must be excluded.**  Plaintiffs' continued defense of Mr. Wallace's "knowledge" opinions is inexplicable.  As they have conceded in their own expert motions, expert testimony about a defendant's knowledge is improper, as it would "'usurp[] the role of the jury.'"  *Supra* at 1 n.1.  It makes no difference how many years of experience Mr. Wallace has or whether he and Plaintiffs feel strongly about the evidence.  As Plaintiffs admit, "Mr. Wallace will opine that no other conclusions could be drawn from the facts but that GT and Ramler knew of Refco's concealment."  Pls.' Opp. 16.  That is precisely what Rule 702 and the governing case law forbid him from doing.  *See* Defs.' Mem. 8–12.[5]

---

[5] Mr. Wallace's opinions about "substantial assistance" are similarly improper.  *See* Defs.' Mem. 8–12.  Plaintiffs do not mention these opinions in their brief and thus have abandoned them.

**B.**    <u>**Mr. Wallace never disclosed any opinions about what a reasonable auditor at**</u>
<u>**the time would have known.**</u>   This Court has observed that an auditing expert "'can putatively

say a reasonable auditor, an ordinary auditor, an auditor skilled in the art, or whatever, looking at

these papers under these circumstances would have drawn such and such a conclusion.'"  Pls.'

Opp. 1 (quoting transcript).  But no such opinion was ever disclosed here.

The Court's observation referred to a hand-up from counsel quoting the opinion that

"Grant Thornton and Mark Ramler knew."  *See* 1/30/13 Hr'g Tr. at 13 (Ex. A to Coberly Decl.

dated 6/24/13).  In discussing the obvious impropriety of that opinion, the Court assumed—quite

reasonably—that it must have been the "second step" of Mr. Wallace's analysis, and that the first

step must have been an analysis of what a reasonable auditor would have concluded based on the

same information.  *Id.*[6]  But in fact, ***Mr. Wallace's report does not include that first step***.

Mr. Wallace has never disclosed any opinion about what a reasonable auditor would have

"known" based on the information that was before these defendants at the time.  He does not use

the terms "reasonable," "ordinary," "experienced," "expert," or "skilled in the art" ***even once*** in

this context.  The phrase "any auditor" (Pls.' Mem. 1) appears only once in his report and once in

his deposition—each time referring to audit procedures or scrutiny that "any auditor" would have

used.  *See, e.g*., Wallace Report ¶ 189; Wallace Dep. 432:18–25.  At no point does he say that

"any auditor" looking at the same information in context would have concluded that Refco was

committing fraud.   The lack of citations in Plaintiffs' brief is telling, given that the opening brief

repeatedly pointed out that Mr. Wallace "does not purport to opine about what a reasonable

---

[6] Plaintiffs suggest that this Court also "noted that an expert may comment on what a party knew because the 'knowledge of someone may be relevant in a fraud case, obviously, to questions of intent.'"  Pls.' Opp. 1–2.  This misconstrues the transcript.  The Court observed, "The knowledge of someone may be relevant in a fraud case," but it did ***not*** say that such knowledge is an appropriate subject for an expert's opinion.   The import of the transcript is exactly the opposite.

auditor would have concluded" at the time.  Defs.' Mem. 11;  *see id*. at 3, 6.[7]  Plaintiffs have not

provided a single citation showing that such an opinion was properly disclosed.

What Mr. Wallace did instead was to draw inferences about what ***these*** auditors "knew,"

based on his own "review of the record."  Wallace Dep. 441:15–19.  That is a quintessential jury

function.  *See SEC v. Tourre*, --- F. Supp. 2d ---, 2013 WL 3089031, at *7 (S.D.N.Y. June 18,

2013) (expert may not "simply assemble the record evidence and opine on what it means").  It is

also  fundamentally different from an opinion about what a hypothetical reasonable auditor

would have known at the time.  For example, an auditor in 2003 would not have been looking at

any particular transaction in isolation.  Nor would he have had the benefit—as Mr. Wallace

did—of reviewing the Bankruptcy Examiner's Report and the results of a forensic review, which

described the fraud in hindsight and told Mr. Wallace exactly where to find it.

Mr. Wallace cannot now give opinions that he did not properly disclose under Rule 26.

We do not know, for example, what information he would say would have been sufficient, in the

context of an audit, to cause a reasonable auditor to "know" that Refco was engaged in fraud.

Even today, he has not disclosed any opinion or methodology on that point, so Grant Thornton

has had no opportunity to examine it, test it, depose him on the subject, or make the methodology

the subject of a motion under *Daubert*.  As a result, the opinion cannot be offered at trial.

**C.** **Mr. Wallace's opinions about GAAS are irrelevant and prejudicial.**  Only 19

of the 136 paragraphs in Mr. Wallace's "findings" about the Grant Thornton Defendants mention

GAAS, either specifically or in the aggregate.  *See* Defs.' Mem. 6.  Even those limited opinions,

however, would invite the jury to impose liability under the wrong standard, incorrectly equating

"a failure to perform GAAS" with "actual knowledge" or "conscious avoidance" of the fraud.

---

[7] Accordingly, Plaintiffs are wrong to suggest that Defendants "admit that Mr. Wallace may
properly testify about what a reasonable professional would have concluded."  Pls.' Opp. 16 n.8.

Wallace Dep. 427:22–25; *see also id*. at 474:17–23 ("I haven't seen any evidence in the record that he had actual knowledge, but by not performing audit procedures, which I believe should have been performed in accordance with GAAS, that's a conscious avoidance of knowing what these transactions really—really were and why they existed."); *id*. at 203:20–204:5 ("[I]f I didn't see evidence of actual knowledge, yet I saw evidence of—of an issue that I thought should have been followed up to a satisfactory conclusion that would have revealed the fraud, then that's a conscious avoidance.") (as to PWC) (attached as Ex. C to Joyce Decl.).

This is wrong as a matter of law.  Liability for aiding and abetting ***cannot*** be based on negligence, recklessness, constructive knowledge, or what the defendants should have known or done differently under the circumstances.  *See* Defs.' Mem. 15–20 (citing cases).  Plaintiffs have no response to this.  At most, they cite cases that address recklessness—not actual knowledge or conscious avoidance.[8]  *See* Pls.' Opp. 14 (citing *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004) (applying a "recklessness" standard); *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992) (same); *Ultramares Corp. v. Touche Niven & Co.*, 255 N.Y. 170, 189 (1931) (assessing fraud claim, not aiding and abetting)).  Plaintiffs' own motions argue that in an aiding and abetting case, whether the defendant's work was "correct, reasonable, or proper" is simply "beside the point."  Pls.' Mem. in Support of Mot. to Preclude Testimony by Stephen D. Lofchie at 13.  They cannot take a different position here.

---

[8] Plaintiffs' citation to the R&R on the motion to dismiss in this case is misleading.  *See* Pls.' Opp. 14.  Although that R&R did include the language about "red flags" and GAAS violations, it did so only as part of a block quote from an R&R in the lawsuit by TH Lee, which included claims for fraud under a recklessness standard.  *See* R&R on Grant Thornton's Mot. to Dismiss at 9 (Dec. 16, 2011) (block quotation begins at 6).  The TH Lee R&R in turn quoted the "red flags" language from *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 370, 385 (S.D.N.Y. 2007), which was also a fraud case with a recklessness standard.  This Court has held that recklessness is ***not*** enough for aiding and abetting.  *See* Defs.' Mem. 16.

Further, Mr. Wallace's GAAS opinions are prejudicial and a tremendous waste of time and resources. Allowing these opinions would focus the parties' limited time at trial (and the jury's attention) on proving and disproving the competence of the audits—an issue that cannot possibly be the basis of liability in this case. And again, such opinions would invite the jury to apply the wrong standard, suggesting a finding of liability based on mere negligence. The only claim here is for aiding and abetting fraud, so the proof should be limited to what Grant Thornton actually knew and did, not what Mr. Wallace believes it should have done differently.

**D.**     **Mr. Wallace did not disclose other opinions.**   In a last-ditch attempt to save their expert, Plaintiffs say he should be allowed at least to give the jury Auditing 101. They say he will "show the jury how workpapers and auditing works" and explain, for example, "what it means when you say accrued interest income" and "what happens to the credit rating of a company if you cannot get an unqualified clean opinion." Pls.' Opp. 16–17.

Again, none of these opinions was ever disclosed. Mr. Wallace's report and deposition do not use the term "accrued interest income" and do not mention credit ratings at all. His report also gives no insight about exactly what he would tell a jury about "how workpapers and auditing works." Nor does he explain what opinions he would offer "pertaining to Refco's financial statements and transactions." Pls.' Opp. 4 (no citation). Again, if these were his opinions, he was required to disclose them, so that the defendants could test them and (if necessary) subject them to a motion to exclude.[9] He cannot now give such opinions at trial.

**E.**     **Plaintiffs admit that Mr. Wallace cannot testify to the facts.**   Defendants' motion also sought to strike Mr. Wallace's lengthy factual background section, based on indications on summary judgment that Plaintiffs intended to use Mr. Wallace to prove or narrate

---

[9] Although Mr. Wallace's report attached a separate document compiling GAAS, he testified that he would not offer any opinions based on that compilation. Wallace Dep. 381:16–382:8.

the facts.  Defs.' Mem. 12–15, *see also Tourre*, 2013 WL 3089031, at *10 (Rule 702 does not

permit an expert to give a "factual narrative").  Plaintiffs have since abandoned this position.

They now agree that the facts must be proven at trial "'by admissible evidence and not expert

assertion.'"  Pls.' Opp. 22–23 (quoting *Malletier v. Dooney & Bourke, Inc*., 525 F. Supp. 2d 558,

677 (S.D.N.Y. 2007)).  They also apparently agree that the Bankruptcy Examiner's Report and

FTI's schedules are hearsay (*id.* at 18) and thus that the facts therein must be proven

independently, with other admissible evidence, before Mr. Wallace can say anything about them.

And while Plaintiffs argue that Mr. Wallace performed independent "testing" on that data—

rather than relying on it blindly (*id.* at 18–19)—they do not contend that he has any independent

opinion about what each figure should be and whether these figures do, in fact, reflect or relate to

Refco's true financial condition.  Mr. Wallace's testimony at trial must be limited accordingly.

  **F.**  **The non-disclosure of the Suffolk Loans in 2005 is irrelevant.**  Mr. Wallace's

opinions are inadmissible in one additional respect as well.  The non-disclosure of the Suffolk

Loans (discussed in Section VI.F of his report) relates to financial statements that come well

after the March 12, 2004 cut-off and are no longer at issue in this case.  *See* Defs.' Mem. 20–22.

Plaintiffs' only response is that this Court's "net deposits" rulings did not explicitly bar the

parties from referring to evidence after the cut-off date.  Pls.' Opp. 23–24.  But those rulings ***do***

hold that SMFF cannot claim injury based on any non-disclosure in Refco's financial statements

for 2005.  Thus, the opinions in Section VI.F are irrelevant and must be stricken.

**CONCLUSION**

  In sum, Mr. Wallace's "knowledge" opinions are wholly improper.  His opinions about

GAAS violations (to the extent he offers any) are irrelevant and prejudicial.  Any other

opinions—including what a "reasonable" auditor would have known—were never disclosed.

And Section VI.F relates to an irrelevant time period.  His testimony should be excluded entirely.

Dated:      Chicago, Illinois
               August 7, 2013

**WINSTON & STRAWN LLP**

By:    <u>/s/ Linda T. Coberly</u>

Linda T. Coberly
Bruce R. Braun
Catherine W. Joyce
David J. Doyle
35 W. Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

Luke A. Connelly
200 Park Avenue
New York, New York 10166
Ph: (212) 294-6700
Fax: (212) 294-4700

*Attorneys for Defendants*
*Grant Thornton LLP and Mark Ramler*

11