UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In re REFCO INC. SECURITIES LITIGATION    :   Case No. 07-md-1902 (JSR)
                                                            :
------------------------------------------------------------X
            This Document Relates to:
------------------------------------------------------------X
KENNETH M. KRYS, *et al.*,                         :
                                                            :
                         Plaintiffs,                :
                                                            :   Case No. 08-cv-3065 (JSR)
         - against -                                :   Case No. 08-cv-3086 (JSR)
                                                            :
CHRISTOPHER SUGRUE, *et al.*,              :
                                                            :
                         Defendants.                :
------------------------------------------------------------X
KENNETH M. KRYS, *et al.*,                         :
                                                            :
                         Plaintiffs,                :   Case No. 08-cv-7416 (JSR)
                                                            :
         -against-                                  :
                                                            :
ROBERT AARON, *et al.*,                           :
                                                            :
                         Defendants.                :
------------------------------------------------------------X
KENNETH M. KRYS, *et al.*,                         :
                                                            :
                         Plaintiffs,                :   Case No. 10-cv-3594 (JSR)
                                                            :
         -against-                                  :
                                                            :
DEUTSCHE BANK SECURITIES INC., *et al.*,   :
                                                            :
                         Defendants.                :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPEAL
FROM SPECIAL MASTER HEDGES' DECEMBER 13, 2012
ORDER REGARDING SPOLIATION OF EVIDENCE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION. ........................................................................................................1

II.    ARGUMENT .................................................................................................................2

    A.    The Special Master's Order. ..............................................................................2

    B.    The Rose Transcript: No Proof that Relevant Evidence Was Discarded ..........3

    C.    The Rose Transcript: No Evidence of Willfulness ............................................5

    D.    Because the Record Does Not Support a Finding of Bad Faith, the Court Should Not Presume the Notes to be Relevant. ........................................7

    E.    The Special Master Incorrectly Concluded that Mr. Rose's Acts Should Be Attributed to SMFF and Plaintiffs. ....................................................12

III.    CONCLUSION ...........................................................................................................12

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alaimo v. Trans World Airlines, Inc.*,
  No. 00 Civ. 3906, 2005 WL 267558 (S.D.N.Y. Feb. 3, 2005) ............................................... 11

*Byrnie v. Town of Cromwell, Bd. Of Educ.*,
  243 F.3d 93 (2d Cir. 2001) ..................................................................................................... 8

*Curcio v. Roosevelt Union Free Sch. Dist.*,
  283 F.R.D. 102 (E.D.N.Y. 2012) .................................................................................... 10, 11

*Hamre v. Mizra*,
  No. 02 Civ. 9088, 2005 U.S. Dist. LEXIS 8460 (S.D.N.Y. May 6, 2005) ............................ 11

*In re Nat'l Century Fin. Enters., Inc.*,
  No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 68379 (S.D. Oh. July 16, 2009) .................... 9, 10

*Oakley v. Fed'n Emp't & Guidance Servs.*,
  No. 10 Civ. 7739, 2011 U.S. Dist. LEXIS 76896 (S.D.N.Y., July 11, 2011) (Rakoff, J.) ................................................................................................................................ 1, 11

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
  271 F.R.D. 429 (S.D.N.Y. 2010) ............................................................................................ 8

*Passlogix, Inc. v. 2FA Tech, LLC*,
  708 F. Supp. 2d 378 (S.D.N.Y. 2010) ............................................................................... 7, 11

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010), *abrogated on other grounds, Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012) ........................................................... 8

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................................ 8

I.      **INTRODUCTION.**

H. Christopher Rose, PlusFunds' former Chief Operating Officer, testified during his deposition that he typically took handwritten notes when he was employed at PlusFunds. The notes, he explained, were "not, you know, grand designs. This is just me keeping track of things to do, to-do lists. And, you know, ongoing stuff." Rose Tr. at 831.[1] Mr. Rose also testified that he typically discarded his notes when they were no longer needed.

Based on this testimony, Special Master Hedges concluded that Mr. Rose "acted willfully" when he "destroyed" notes. He also found that Mr. Rose destroyed notes after PlusFunds had a duty to preserve evidence, and that the notes contained information that was relevant to this dispute.

The Special Master's findings – reached last December – were unsupported and clearly erroneous.

To begin, he reached his conclusions based only on 36 lines of actual testimony from Mr. Rose. Based on this paper-thin record, it is impossible to tell if Mr. Rose's notes relate in any way to this litigation, if he took notes at any particular meeting, or indeed that he discarded any notes after there was a duty to preserve them. *See Oakley v. Fed'n Emp't & Guidance Servs.*, No. 10 Civ. 7739, 2011 U.S. Dist. LEXIS 76896, at *8 (S.D.N.Y., July 11, 2011) (Rakoff, J.) (denying spoliation motion when "deposition testimony is both vague and inconsistent and thus is insufficient to establish that the [evidence] ever existed").

Next, there is absolutely no evidence that Mr. Rose discarded any particular document because he thought it would be damaging to him or PlusFunds. There is no evidence that Mr.

---

[1] Excerpts from the deposition of Howard Christopher Rose on June 21, 2012 are attached as Ex. 1 to the August 26, 2013 Declaration of Mason C. Simpson in Support of Plaintiffs' Appeal from Special Master Hedges' December 13, 2012 Order Regarding Spoliation of Evidence (the "Simpson Decl.").

Rose was aware that his notes were required to be preserved. There is no evidence that Mr. Rose took any conscious action to thwart the judicial process.

Finally, the Special Master concluded that Mr. Rose's conduct should be attributed to the SPhinX funds, including SMFF. This conclusion was erroneous, as Mr. Rose was an employee of PlusFunds, not SPhinX.

For these reasons, we ask the Court to disallow the Special Master's findings and forbid Grant Thornton from mentioning them at trial. We note further that the Special Master subsequently recommended the denial of Defendants' request for an adverse inference instruction. Plaintiffs do not appeal from the Special Master's recommendation not to impose any sanctions.[2]

## II. ARGUMENT

### A. The Special Master's Order.

The Special Master held a hearing on Defendants' Motion for Spoliation Sanctions on November 28, 2012.[3] The Special Master began that hearing by noting that "I will not have argument on willfulness." Tr. at 11. He explained what he saw as Mr. Rose's "modus operandi": "when a notebook was filled or he thought it was filled he just decided to discard it." *Id.* at 10. "There's no question in my mind that that's wrongful conduct," he added. *Id.*

The Special Master did not elaborate, at the hearing or in his order, about why he believed Mr. Rose's conduct was "wrongful" and "willful." He did not, for example, maintain

---

[2] The Special Master's December 13, 2012 order at 5 states that it "shall not be considered final for purposes of appeal until the Special Master makes further rulings with respect to adverse inferences and preclusion sanctions, if any." (attached as Ex. 2 to the Simpson Decl.) Thus, that order did not become ripe for appeal until the Special Master issued his order recommending denial of sanctions on August 9, 2013.

[3] Excerpts of the transcript of the November 28, 2012 Oral Argument before Special Master Hedges (the "Hearing Tr.") are attached to the Simpson Decl. as Ex. 3.

2

that Mr. Rose had intentionally violated any legal duty – or that Mr. Rose believed he was discarding evidence that was required to be preserved. Instead, he simply repeated his initial conclusion: "There's no question that there was willful conduct here." *Id.*

The Special Master clarified that "[n]o finding has been made that Mr. Rose acted in bad faith or with an evil intent, although a jury could decide that he did." Dec. 13, 2012 Order at 3 (citations and internal quotation marks omitted).

Next, the Special Master concluded that Mr. Rose's notes "contained relevant information," although "there is no way to know the degree of relevance and how probative Mr. Rose's notes would have been on matters that may proceed to trial." *Id.* at 3-4 (citations and internal quotation marks omitted).

The Special Master decided that Mr. Rose's acts were attributable "to the SPhinX Funds and to PlusFunds based on his position and agency principles." *Id.* at 3. At the hearing, the Special Master acknowledged that Mr. Rose was an employee of PlusFunds, not SPhinX, but concluded that his acts were attributable to SPhinX because "they were all interrelated companies in one way or the other." Hearing Tr. at 89.

Finally, the Special Master concluded that SPhinX and PlusFunds had "a duty to preserve evidence relating to Refco, including Mr. Rose's notes, beginning on October 12, 2005." Dec. 13, 2012 Order at 3.

  **B.** <u>**The Rose Transcript: No Proof that Relevant Evidence Was Discarded**</u>

Mr. Rose testified that it was his practice to discard his handwritten notes after he had no need for them, typically "within a week" after he had filled up a binder of notes. Rose Dep. Tr. at 830. Mr. Rose's testimony on this point was terse and non-specific; counsel did not elicit testimony that clearly established what was discarded or when.

3

For any notes Mr. Rose took prior to October 2005 – when most of the key events in this litigation took place – Mr. Rose testified that he discarded them as a matter of course, well before PlusFunds even arguably had an obligation to preserve evidence. *Id.* at 830-31. Of course, there can be no spoliation liability when evidence is discarded before a preservation duty arises.

Counsel asked Mr. Rose: "So as of the October 10, 2005 date, did you have any handwritten notes in your possession relating to your work at PlusFunds?" Mr. Rose responded that "I would have had them in – on around that date." Rose Tr. at 830. When asked, "And what happened to them?" he responded that "I'm sure they were just thrown out at some point during that process." *Id.* at 830-31.

This testimony does not show that Mr. Rose discarded any relevant evidence after October 12, 2005, the date on which the Special Master concluded that PlusFunds' preservation obligation arose. It is important to focus on the exact question that Mr. Rose was asked: "So as of the October 10, 2005 date, did you have *any* handwritten notes in your possession *relating to your work at PlusFunds*?" Of course, "any" notes could mean a handful of notes, or even a single note. And counsel's broad question ("relating to your work at PlusFunds") could refer to notes that had nothing to do with this litigation. Deposing counsel asked no follow-up questions to clarify Mr. Rose's testimony.

Thus, because Mr. Rose testified that he had "any" handwritten notes "relating to [his] work at PlusFunds," this testimony cannot show that Mr. Rose possessed handwritten notes that are even arguably relevant to this litigation at a time when PlusFunds had an obligation to preserve them.

4

Again, in response to counsel's question, Mr. Rose did not say that he possessed notes as of any specific date. He responded that "I would have had them in – on around that date." Rose Tr. at 830. Because Mr. Rose merely testified that he possessed (unspecified) handwritten notes "on around" October 10, his testimony does not establish that he had any such notes at a time when PlusFunds' preservation obligation had begun.

This is not splitting hairs. This vague record simply cannot support the Special Master's conclusion that any relevant evidence was discarded after October 12, 2005. When counsel asked about notes "relating to [Mr. Rose's] work at PlusFunds," Mr. Rose reasonably could have understood that to mean documents that had nothing to do with this litigation.

And deposing counsel never asked Mr. Rose a single question about the substance of his notes – for example, whether he took notes that related to any topic that relates to this litigation. Mr. Rose said only one thing about his notes – that "these are not, you know, grand designs, this is just me keeping track of things to do, to-do lists. And, you know, ongoing stuff." Rose Tr. at 831.

Plaintiffs do not dispute, as a general matter, that "to-do" lists could be relevant to this lawsuit. But the record simply does not support such a conclusion. Mr. Rose was deposed for three days, and defense counsel certainly had every opportunity to ask Mr. Rose to elaborate about what was in those notes. The Special Master assumed that these notes were relevant, but his assumption is not supported by the record.

Because the record on this point is so spare, the Special Master was wrong to conclude that any relevant evidence was destroyed at all, much less willfully.

**C.   The Rose Transcript:   No Evidence of Willfulness**

What follows is the only testimony regarding Mr. Rose's destruction of documents after October 12, 2005:

5

> Q: Okay. So as of the October 10, 2005 date, did you have any handwritten notes in your possession relating to your work at PlusFunds?
>
> A: I would have had them in – on around that date, yes.
>
> Q: And what happened to them?
>
> A: I'm sure they were just thrown out at some point during that process.
>
> Q: *Even after the events at Refco unfolded and there was impending litigation, you would have thrown out notes?*
>
> A: *Yes, yeah.*

Rose Tr. at 830-31.

This testimony – a throwaway three-line question and a two word answer, with no follow up – does not establish that Mr. Rose destroyed documents "willfully," or that the notes had anything to do with potential Refco-related litigation, as Defendants now claim. It is not clear what the deposing attorney meant by "events at Refco," nor is it clear what "notes" he was referencing. The questioner may have had a date in mind when he spoke of when "there was impending litigation," but did not identify one, nor did he specify the "impending litigation" he had in mind. Moreover, Mr. Rose is not an attorney, and it is far from clear that he understood the questioner's apparent point: that there was a duty to preserve at a time when there was "impending litigation."

Also, the deposing attorney's question was hypothetical: "you *would* have thrown out *notes*?" The witness's "yes, yeah" response, then, could fairly be interpreted to mean that he believed his notes were not relevant or subject to any preservation duty, and "would have thrown" them out even after the "events at Refco" had happened, or "there was impending litigation."[4]

---

[4] The question was also compound, asking if the witness would have thrown out notes after (i) the events at Refco unfolded; and (ii) there was impending litigation. Since those events may

6

Once again, this is not splitting hairs. The Special Master assumed that Mr. Rose acted "wrongfully" and "willfully," but the record does not support this conclusion. Even assuming that Mr. Rose "threw out" relevant evidence after the preservation date – and the record emphatically does not support such a conclusion – this testimony does not show that Mr. Rose believed that his notes were legally relevant, or that he singled out any harmful evidence for destruction. There is no support for the conclusion that Mr. Rose "willfully" disregarded any legal obligation here.

### D. Because the Record Does Not Support a Finding of Bad Faith, the Court Should Not Presume the Notes to be Relevant.

Even if the Special Master were justified in concluding that Mr. Rose's notes were broadly related to issues in potential litigation, that would not be enough to show that the documents were "relevant" for spoliation purposes. In the spoliation context, relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Passlogix, Inc. v. 2FA Tech, LLC*, 708 F. Supp. 2d 378, 411 (S.D.N.Y. 2010) (internal citation omitted). Instead, "[a] discarded document is relevant where a reasonable trier of fact could find that the document either would harm the spoliator's case or support the innocent party's case." *Id.*

The Special Master's order did not address this distinction. When he said that the notes "contained relevant information," he did not specify whether he meant that the documents were "discovery relevant" or "spoliation relevant."

In any event, "[w]here a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the

---

have occurred at different times, counsel's question was ambiguous and Mr. Rose's response was essentially meaningless.

7

missing evidence was unfavorable to that party." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010), *abrogated on other grounds, Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012); *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 439 (S.D.N.Y. 2010) ("In the absence of bad faith or other sufficiently egregious conduct, it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him."). (citation and internal quotation marks omitted). When a spoliating party was "merely negligent," however, the moving party must present "extrinsic evidence" tending to show that any destroyed materials would be favorable to its case. *Id.* In other words, "[t]he burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'" *Byrnie v. Town of Cromwell, Bd. Of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) (citation omitted). "This corroboration requirement is . . . necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) (citation and internal quotation marks omitted).

As Judge Scheindlin has observed, courts should not routinely presume that missing evidence was relevant. "If a presumption of relevance and prejudice were awarded to every party who can show that an adversary failed to produce any document, even if such failure is completely inadvertent, the incentive to find such error and capitalize on it would be overwhelming. This would not be a good thing." *Pension Comm.*, 685 F. Supp. 2d at 468.

Because the record does not support a finding of bad faith, there can be no presumption of relevance and prejudice. There must be extrinsic evidence to show that the destroyed

8

materials would have been favorable to Defendants. The Special Master did not address this issue in his order, and no such extrinsic evidence exists.

Defendants argued to the Special Master that the missing materials likely would have been favorable to their case because "during a time period when PlusFunds was under a duty to preserve evidence, Mr. Rose attended meetings relating to Refco that are critical to Defendants' defenses in this case." Memorandum of Law in Support of the Undersigned Defendants' Motion to Dismiss or for Other Sanctions for Spoliation of Evidence (the "Defs.' Mem."), MDL Dkt. No. 1625, dated Aug. 21, 2012, at 18.

Of course, the fact that Mr. Rose attended meetings does not suggest, one way or the other, whether notes taken during these meetings would have been favorable to Defendants. Moreover, Defendants mentioned several specific meetings in their Motion, but they never asked Mr. Rose what happened at the meetings, or whether he took notes.

In short, there is nothing in the record – in the form of deposition testimony, affidavits, documents or otherwise – to suggest that information in Mr. Rose's notes would be favorable or unfavorable to Defendants.[5]

In a strikingly similar case, Credit Suisse claimed that the Senior Vice President of its litigation opponent failed to preserve notes "he likely took" after litigation was anticipated. *In re Nat'l Century Fin. Enters., Inc.*, No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 68379, at *43 (S.D. Oh. July 16, 2009). Credit Suisse raised the exact same theory of prejudice raised by these Defendants: "that it is prejudiced by the loss of documents because . . . employees were unable to recall with any specificity the details of [significant events] . . . ." *Id.* Credit Suisse further

---

[5] Defendants said that Mr. Rose attended several meetings where important issues were discussed. *See* Defs.' Mem. at 18-20. Even accepting Defendants' assertion that "critical topics" were discussed at these meetings, that does not suggest a thing about whether Mr. Rose's notes would have been favorable or unfavorable to them.

9

maintained that was prejudiced because it was unable to "probe" certain important issues. The court decisively rejected Credit Suisse's argument that the notes were relevant, noting that "Credit Suisse has not presented any evidence that corroborates its position that the missing notes would have been favorable to its case." *Id.* at *44.

In yet another similar case, the plaintiff in an employment discrimination case sought spoliation sanctions due to the defendants' destruction of handwritten notes that detailed meetings between the plaintiff and the defendant. *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102 (E.D.N.Y. 2012). During her deposition, the defendant testified that:

> I keep a bound notebook with me in which I write what I believe to be important information at the time of the writing. I will use the notebook as a reference and a sort of calendar to help remind me of tasks that I need to do . . . . The notebook contains such information as the telephone numbers for the board members and the dates of certain planned school events. The notebook contains notes that serve as a reminder to me that I have to be at a certain place or that I have to do a certain task.

*Id.* at 113-14.

Based on this testimony, the plaintiff claimed that the defendant had taken "detailed notes" regarding all of their meetings together. The court rejected this characterization, finding it "somewhat overblown in light of the actual testimony . . . ." Although the defendant did testify that she had taken some notes that involved the plaintiff, the court concluded that "there is no evidentiary basis to conclude that these missing notes would have been any more helpful to [plaintiff] than they would have been to [defendant]." As in this case, the plaintiff focused his argument on "having the Court *presume* relevance." *Id*. In doing so, the plaintiff offered "mere speculation," rather than an explanation of how the proffered deposition testimony confirmed that the destroyed notes would have been favorable to her. *Id*. at 114.

10

The *Curcio* court then offered an observation that has particular resonance here: "the Court is of the opinion that the Plaintiff had the ability to garner more information about the missing notes during [defendant's] deposition. For whatever reason, many questions that could have shed light on the content of these notes appear to have never been asked. Therefore, based on the record present here, the Court finds that there is insufficient evidence to permit a reasonable trier of fact to conclude that the destroyed notes would have shown unlawful discrimination or would have otherwise been favorable to [plaintiff]." *Id*.

In short, there is absolutely no extrinsic evidence – in Mr. Rose's deposition, or anywhere else – that would tend to show that any missing materials would have been favorable to Defendants. *See Oakley*, 2011 U.S. Dist. LEXIS 76896, at *8 (denying motion for spoliation sanctions when "there is no evidence suggesting that the defendants discarded any evidence with a culpable state of mind"; noting that "mere carelessness is not a sufficient basis for spoliation sanctions"); *Passlogix*, 708 F. Supp. 2d at 414 (moving party argued unsuccessfully that missing e-mail would be favorable because it may have been able to use the email to "test the bonafides" of a defense); *Hamre v. Mizra*, No. 02 Civ. 9088, 2005 U.S. Dist. LEXIS 8460, at *9 (S.D.N.Y. May 6, 2005) (denying plaintiffs' request for adverse inference where they "did not put forth *any* evidence" indicating that destroyed documents would corroborate their theory of the case); *Alaimo v. Trans World Airlines, Inc.*, No. 00 Civ. 3906, 2005 WL 267558, at * 3 (S.D.N.Y. Feb. 3, 2005) ("The record fails to support plaintiff's conclusory assertions that defendant destroyed relevant and material evidence.").

Thus, the Special Master was wrong to conclude that Mr. Rose's notes contained "relevant information."

11

### E. The Special Master Incorrectly Concluded that Mr. Rose's Acts Should Be Attributed to SMFF and Plaintiffs.

Finally, the Special Master was wrong to conclude that Mr. Rose's acts should be attributed to SPhinX – and to Plaintiffs. It is true, as a general matter, that an entity is responsible for spoliation committed by its agents. But Mr. Rose was not SPhinX's agent; he was an employee of *PlusFunds*. We are not aware of any case where the spoliation of Company A's employee is imputed to Company B, whatever the relationship between the two companies. In this case, PlusFunds itself was responsible for the preservation of its own documents, issuing a litigation hold memo to its own employees. If PlusFunds somehow mishandled its preservation obligations, by failing to ensure that its employees preserved relevant evidence, it would be unfair to hold SMFF responsible for those failings, as SMFF had no role in preserving PlusFunds' documents.

It would be even more unfair to impute such spoliation to Plaintiffs, who were appointed in June 2006, well after the alleged spoliation, and did not receive custody of PlusFunds' documents until March 2009. Again, we are unaware of any case where a liquidator or trustee was found liable for spoliation sanctions based on the inherited conduct of a company's employee – much less the employee of a different company altogether.

### III. CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court disallow the Special Master's findings and conclusions regarding Mr. Rose.

Dated: New York, New York
August 26, 2013

**BROWN RUDNICK LLP**

By:  /s David J. Molton
     David J. Molton
     Andrew Dash
     Mason Simpson

Seven Times Square
New York, New York 10036
Tel: (212) 209-4800
Fax: (212) 209-4801
dmolton@brownrudnick.com
adash@brownrudnick.com
msimpson@brownrudnick.com

- and -

Leo R. Beus (admitted *pro hac vice*)
Robert T. Mills (admitted *pro hac vice*)
Lee M. Andelin (admitted *pro hac vice*)
BEUS GILBERT PLLC
701 N. 44th Street
Phoenix, Arizona 85008
Telephone: (480) 429-3000
Facsimile: (480) 429-3100
lbeus@beusgilbert.com
rmills@beusgilbert.com
landelin@beusgilbert.com

*Attorneys for Plaintiffs*

61360634 v2